UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

DENISE ROCHELLE GEIGER,

        Plaintiff,

    v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

        Defendant.

NO. C17-1206-JPD

ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS

Plaintiff Denise Rochelle Geiger appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

I.     FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a fifty-two year old woman with a Master's Degree in social work from Florida Atlantic University. Administrative Record

ORDER - 1

("AR") at 42-43.[1]  Her past work experience includes employment as a social worker and a counselor/case manager for a social service agency working with homeless people.  AR at 43-44.  She also served in the United States Air Force from April 1988 to July 1993.  AR at 51.  Plaintiff was last gainfully employed in November 2015 at the Downtown Emergency Services Center in Seattle.  AR at 44-45.

On January 7, 2016, plaintiff filed applications for SSI payments and DIB, alleging a disability onset date of November 30, 2015.  AR at 19.  Plaintiff asserts that she is disabled due to panic attacks, a generalized anxiety disorder, a major depressive disorder, type 2 diabetes, high blood pressure, and obesity.  AR at 46-49, 52, 59, 70.  She had most recently attempted suicide by overdose on December 4, 2015, shortly after resigning from her last job.  AR at 45-46.[2]

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 19.  Plaintiff requested a hearing, which took place on October 12, 2016.  AR at 39-66.  On March 20, 2017, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 16-32.  Plaintiff's request for review was denied by the Appeals Council, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On August 14, 2017, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 4.

---

[1] There is evidence that although plaintiff attained her MSW, she is not licensed because she did not work at any job long enough for the supervision required for licensure.  AR at 648.

[2] The record reflects that plaintiff has had five suicide attempts by various methods in her life, and three psychiatric hospitalizations.  AR at 2191.

ORDER - 2

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Geiger bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[3] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one

---

[3] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

ORDER - 4

or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On March 20, 2017, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since November 30, 2015, the alleged onset date.

ORDER - 5

3. The claimant has the following severe impairments: diabetes mellitus; obesity; hypertension; major joint dysfunction; muscle, ligament fascia dysfunction; affective disorder; anxiety disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps/stairs, balance, stoop, bend, squat, kneel, and crouch, crawl or climb ladders, ropes or scaffolds. She should have access to clean bathrooms. The claimant is able to perform the basic mental demands of competitive, semiskilled work, including the ability to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations, and to deal with changes in a routine work setting. She requires no more than occasional interaction with the general public and supervisors.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1964 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.[4]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 30 2015, through the date of this decision.

AR at 21-32.

---

[4] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

ORDER - 6

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in evaluating the medical opinion evidence?
2. Did the ALJ err in evaluating plaintiff's testimony?
3. Did the ALJ err in assessing plaintiff's RFC?

Dkt. 10 at 1; Dkt. 11 at 1.

## VII. DISCUSSION

### A. The ALJ Erred in Evaluating the Medical Opinion Evidence

#### *1. Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22

(9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

    2.  *Rahul Khurana, M.D.*

Plaintiff contends that the ALJ erred by rejecting the opinion of examining psychiatrist, Rahul Khurana, M.D., regarding plaintiff's mental limitations in favor of the opinions of two non-examining sources, Dr. Beth Fitterer and Dr. Bruce Eather. AR at 29. Specifically, the ALJ asserted that he gave "great weight" to the May 2016 opinion of Dr. Fitterer (who opined that plaintiff could carry out detailed tasks with periodic waning of attention and pace, and slowly adjust to routine workplace changes) as well as Dr. Bruce Eather's July 2016 opinion

ORDER - 8

affirming Dr. Fitterer's opinion. AR at 29, 76, 91, 107, 122. However, the ALJ gave "little weight" to examining psychiatrist Dr. Khurana's opinion that plaintiff had several marked to severe limitations in functioning, although Dr. Khurana provided the only opinion in the record from a physician who had actually met with the plaintiff.

Rahul Khurana, M.D., performed a psychiatric evaluation of plaintiff on May 11, 2016, which included a clinical examination as well as a review of her medical records. AR at 2190-92. Dr. Khurana diagnosed plaintiff with major depressive disorder (recurrent episode, severe), panic disorder, and a rule out depersonalization/derealization disorder. AR at 2192. Dr. Khurana noted that plaintiff has had five separate suicide attempts, and that she has been psychiatrically hospitalized three times. AR at 2191. During her childhood, her parents were physically and emotionally abusive, and her family was homeless at times. AR at 2191. Dr. Khurana observed that plaintiff appeared unhappy, but her mini-mental status examination results were otherwise unremarkable. AR at 2191-92.

Dr. Khurana opined that plaintiff's prognosis was "poor to fair at best" and her symptoms are "likely to be lifelong, & chronically disabling both socially and occupationally. There is no evidence of malingering." AR at 2192. She further opined,

> I believe that the severity of her psychiatric illnesses makes it unrealistic for patient to ever work again in any meaningful, long term capacity. Patient has mild difficulty with simple instructions. Work-related judgments and ability to carry out more complex instructions are moderately to markedly impaired. Pt's understanding is with mild to moderate impairment. Pt has marked disability for sustained concentration & persistence. These illnesses also make typical social interactions (with public, supervisors, or coworkers) in the work environment severely impaired. Patient would also have marked difficulty responding to changes in the work routine.

AR at 2192.

ORDER - 9

The ALJ assigned "little weight" to Dr. Khurana's opinion for five reasons. AR at 29. First, the ALJ found that Dr. Khurana's opinion "interferes with the Commissioner's duty to determine disability." AR at 29. Although the ALJ is correct that the question of whether or not a plaintiff is "disabled" is a question for the ALJ, rather than a treating or examining physician, it does not relieve the ALJ of his or her obligation to provide specific and legitimate reasons, based upon substantial evidence in the record, for rejecting that doctor's opinion. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). In other words, the fact that a physician offered an opinion on the ultimate issue of disability, which is not binding on the ALJ, is not necessarily relevant to the issue of how much weight that doctor's opinion is entitled to. Without more, the fact that Dr. Khurana opined that plaintiff is disabled is an insufficient reason for the ALJ to reject her opinion. AR at 29.

Second, the ALJ found that Dr. Khurana's opinion is "inconsistent with the claimant's long history of working [and attending school], despite her mental health issues, and with the substantial body of mental health records indicating that she has largely recovered from the anxiety that led her to quit her job, and is doing very well after leaving her very stressful job." AR at 29. The ALJ observed that plaintiff has reported experiencing anxiety and depression for all of her adult life, but "nonetheless the claimant has engaged in substantial gainful activity and completed graduate school." AR at 29. The ALJ found that plaintiff was "doing well with working until she abruptly left her job due to feeling overwhelmed when her office faced a shortage of workers. Since the claimant has left the stressful environment, her anxiety has improved considerable (sic) and she claimant (sic) would be capable of working in a less stressful setting." AR at 29.

The Court does not find that the ALJ's reliance on plaintiff's ability to sustain employment and attend school in the past, despite her longtime anxiety and depression, is a

ORDER - 10

specific and legitimate reason, supported by substantial evidence, for discounting the evidence that her symptoms had worsened to such a degree that she was no longer able to do so. In other words, the fact that plaintiff was able to work *prior to* the onset of potentially disabling limitations is not a specific and legitimate reason to discredit Dr. Khurana's May 2016 opinion. This is particularly true because the ALJ's finding ignores plaintiff's testimony that she was able to sustain employment at her most recent job because she was actually missing work up to once per week, and leaving work early on other days without her supervisor's knowledge. AR at 48-50, 1210, 1574. Plaintiff's ability to leave or miss work as needed when her anxiety worsened likely allowed plaintiff to sustain "full-time" employment for a much longer period of time than she could if she had worked in a setting where her attendance was closely monitored.

Similarly, the ALJ fails to discuss the fact that a full six months before plaintiff resigned, she took a one-month medical leave (from May to June 2015) due to her ongoing anxiety and panic attacks. She reported she was "crying all day." AR at 648, 788. Thus, the ALJ's statement that plaintiff was "doing well with working" until her resignation and most recent suicide attempt is not accurate. Plaintiff returned to work for four to five months after her medical leave, and soon thereafter was hospitalized for a suicide attempt by overdose. AR at 1465, 1751. Dr. Khurana performed her evaluation six months later and stated that "pt. has not had a good response to treatment." The ALJ does not cite any evidence for his assertion that the record is inconsistent with Dr. Khurana's opinion regarding plaintiff's functioning. AR at 29.

The ALJ's assertion that plaintiff could perform work in a lower stress environment because plaintiff's "anxiety has improved considerabl[y]" and because she is not taking anxiety medication frequently, is also not supported by substantial evidence. Plaintiff testified that many of her medications (except gabapentin for anxiety) were reduced or eliminated following her attempted suicide when she took several prescribed medications in excess, but that she was

ORDER - 11

working with her medication manager at the VA to find "a better combination for me." AR at 52, 1465, 1751. The record also reflects that she was attempting a "more holistic approach" to her treatment, which included eliminating many medications. AR at 2217-18. It is not the role of the ALJ to make independent medical findings. The ALJ erred by assuming, without citing to any medical evidence to support his conclusion, that because she was capable of reducing some of her medications, she must be able to tolerate full-time work in an undefined lower stress environment. *See, e.g., Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996) ("…ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

The ALJ's assertion that "the claimant was doing well with working until she abruptly left her job due to feeling overwhelmed when her office faced a shortage of workers" also grossly oversimplifies the circumstances that preceded plaintiff's suicide attempt, and ignores the substantial evidence of plaintiff's ongoing struggles with depression and anxiety. The record reflects five different suicide attempts over the course of plaintiff's lifetime, reflecting an ongoing struggle with severe mental health symptoms rather than an isolated incident caused by situational stressors. Plaintiff has reported that she first attempted suicide at age five in a swimming pool, and she required cardiopulmonary resuscitation. AR at 648. In middle school, she attempted suicide a second time, and her "worst episode" took place in 2008, when she attempted suicide twice within a few days. AR at 648. Plaintiff reported that she has held many jobs since she began working at age 15, and always had great difficulty with authority figures and supervisors. AR at 648.

The ALJ's third reason for rejecting Dr. Khurana's opinion was because he considered it to be inconsistent with plaintiff's assertion to a treatment provider "that she would obtain at least part-time work if she needed to do so." AR at 29. However, the fact that plaintiff told Christopher Miller, Ph.D., that she would consider a vocational rehabilitation referral if

ORDER - 12

necessary "in the event that the SSI/SSDI decisional process takes too long and she is in need of part-time employment," does not imply that plaintiff is willing and able to work at substantial gainful activity levels. AR at 1854. In fact, plaintiff declined the referral from Dr. Miller because she "is not interested in a referral at this time and shared that her sister is able to provide financial support." AR at 1854. In any event, the fact that plaintiff has consistently expressed a desire (regardless of her ability) to contribute to society and support herself financially is not a specific and legitimate reason to discount Dr. Khurana's opinion that she has severe functional limitations.

Finally, the ALJ found that Dr. Khurana's opinion is "inconsistent with her own examination findings" that included an unremarkable mini-mental status exam (MMSE), as well as "her findings that the claimant had only mild difficulty with simple instructions and understanding." AR at 29. A MMSE quantifies cognitive functioning and screens for cognitive loss, but plaintiff's alleged impairments are related to anxiety and depression. Dr. Khurana did observe evidence of plaintiff's depression during the MMSE, noting that she "looks unhappy" and displayed "wide range of affect from smiling to crying." AR at 2191. Thus, the fact that plaintiff scored "30 out of 30 on the mini-mental status examination," without more, does not negate Dr. Khurana's opinion regarding plaintiff's depressive and panic disorders. AR at 2192. Similarly, it is not clear why Dr. Khurana's assessment of only a "mild difficulty with simple instructions and understanding" is inconsistent with her ultimate opinion that plaintiff is unable to sustain full-time work, in light of Dr. Khurana's assessment of other severe or marked limitations, such as her opinion that plaintiff has "marked disability for sustained concentration and persistence," severe impairments in social functioning, and "marked difficulty responding to changes in the work routine." AR at 2192.

Accordingly, the Court finds that the ALJ's reasons for rejecting Dr. Khurana's opinion are not specific, legitimate, or supported by substantial evidence in the record. This case must be remanded for the ALJ to reevaluate Dr. Khurana's opinion, and provide legally sufficient reasons for rejecting her opinion, if such a conclusion is warranted.

### 3. Beth Fitterer, Ph.D. and Bruce Eather, Ph.D.

Based upon her review of the record, Beth Fitterer, Ph.D. assessed moderate limitations in plaintiff's ability to maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting. AR at 79-80, 94-95. However, despite these findings, Dr. Fitterer opined that plaintiff could "carry out detailed tasks with periodic waning of attention and pace secondary to mood symptoms" and slowly adjust to routine workplace changes. AR at 76, 91. In support of this opinion, Dr. Fitterer wrote, "[s]olid, consistent work history with MSW degree." AR at 80. Bruce Eather, Ph.D. affirmed Dr. Fitterer's findings in July 2016. AR at 110-112, 125-27. The ALJ assigned both of these opinions "great weight" because they were "consistent with the claimant's stable mental health condition through regular treatment, and her intact cognitive functioning, including a perfect score on a mini-mental status examination." AR at 29.

Here, the Court does not find that the two State agency consultants' opinions constitute "substantial evidence" to justify the ALJ's rejection of Dr. Khurana's opinion. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2002) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record."). As discussed above, the ALJ

ORDER - 14

overstates the significance of plaintiff's intact cognitive functioning during Dr. Khurana's MMSE, which does not negate the severity of her symptoms of anxiety and panic or indicate that her mental health condition should be considered "stable."  The ALJ cites no other evidence from the record to support this conclusion.  For example, there is no indication that plaintiff has been discharged from mental health treatment at the VA.  On the contrary, plaintiff testified during the hearing that she was receiving multiple forms of mental health treatment from the VA every week.  AR at 51.  She "just finished up a cycle of two support groups a week.  Now I have one a week.  And I have a . . . recovery coach that I see on a regular basis.  And I also have a psychiatrist."  AR at 51.  Plaintiff testified that she began her treatment at the VA for anxiety and depression "soon after I got out of the military," in the early 1990's.  AR at 52.  She also testified that in addition to "dialectical behavioral therapy," she was working to "find a better combination [of medications] for me" following her most recent suicide attempt by overdose.  AR at 52.

The Court also agrees with plaintiff's contention that the non-examining physicians' opinions are apparently based upon their questionable finding that plaintiff has a "solid, consistent work history" despite her impairments.  As noted above, plaintiff took a six-month leave of absence in 2015, and has had twelve different employers since 2004.  She has not even met the requirements for her social worker's license because "she did not believe that she could work at any job long enough for the supervision required for licensure."  AR at 48-50, 224-26, 648.  *See also* 20 C.F.R. § 404.1527(c)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions.").

Finally, the Court notes that it is not clear how the non-examining physicians believe plaintiff can have moderate limitations in responding to changes and completing a normal work day, and yet be capable of full-time work. Moreover, the ALJ apparently rejected the state agency physicians' opinion that plaintiff had no social limitations, AR at 80, 111, as he found that plaintiff's "history of anxiety symptoms and her own reports would necessitate reduced contact with the public and supervisors." AR at 29. However, at the same time, the ALJ failed to adopt Dr. Khurana's opinion that plaintiff would have social limitations pertaining her to coworkers as well. Thus, the ALJ did not fully adopt either the nonexamining State agency physicians' opinions, or Dr. Khurana's opinion, with respect to plaintiff's social limitations resulting from her impairments.

On remand, the ALJ should reevaluate the opinions of the nonexamining State agency physicians for the reasons discussed above. The ALJ should also contact plaintiff's treating physicians and request a functional assessment of plaintiff's abilities during the time period at issue, and if necessary, order a consultative examination. Specifically, the ALJ should consider the opinions of plaintiff's VA treating psychiatrist of nearly six years, Dr. Yari-Doty, and VA treating psychologist, Dr. Painter, AR at 296-98, whose opinions the Appeals Council apparently excluded from the record because they were dated within two weeks after the ALJ's decision and therefore the Appeal Council found they did "not relate to the period at issue." AR at 2.

    B. <u>On Remand, the ALJ Should Reconsider Plaintiff's Testimony</u>

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons

ORDER - 16

explained in this decision." AR at 26.  As the result, the ALJ asserted that "these statements have been found to affect the claimant's ability to work only to the extent they can reasonable be accepted as consistent with the objective medical and other evidence." AR at 26.  Because this case is being remanded for reconsideration of the medical evidence, and the Court has found that credibility determinations are inescapably linked to conclusions regarding medical evidence, 20 C.F.R. § 404.1529, the ALJ's assessment of plaintiff's testimony is also reversed and the issue remanded.  After re-evaluating the medical evidence, the ALJ should reassess plaintiff's testimony, and provide clear and convincing reasons for rejecting it should such a conclusion be warranted.

## VIII.   CONCLUSION

For the foregoing reasons, this case is REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.

DATED this 12th day of January, 2018.

*[signature: James P. Donohue]*

JAMES P. DONOHUE
Chief United States Magistrate Judge